UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
DOCKET NO. 2:12CV92

| | | |
|---|---|---|
| **ALMA M. MCCLURE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiff Alma Louise McClure's Motion for Summary Judgment (Doc. 11) and Memorandum in Support of Summary Judgment (Doc. 12) and Defendant, Carolyn W. Colvin's Motion for Summary Judgment (Doc. 13) and Memorandum in Support of Summary Judgment (Doc. 14). For the following reasons, this Court will **GRANT** Plaintiff's Motion for Summary Judgment, **DENY** Defendant's Motion for Summary Judgment and **REVERSE AND REMAND** the Commissioner's determination.

I.      **Administrative History**

On July 27, 2009, Plaintiff protectively filed for Social Security Disability Insurance benefits and Supplemental Security Income benefits with an alleged onset date of disability of October 15, 2005. (Tr. 13, 251-60, 266-67). After Plaintiff's applications were denied initially and upon reconsideration, Plaintiff requested a hearing with an Administrative Law Judge ("ALJ"). (Tr. 80). On March 30, 2011, a video hearing took place with Administrative Law Judge ("ALJ") Ivar E. Avots presiding from Greenville, South Carolina. (Tr. 81). An attorney, Russell R. Bowling, represented Plaintiff during the hearing. (Tr. 81). Also joining Plaintiff and

her attorney was Plaintiff's sister, Minnie Mathis, and Vocational Expert, Dr. Kathleen H. Robbins. (Tr. 81). At the hearing, Plaintiff amended the alleged onset date to November 5, 2009. (Tr. 85). The ALJ issued an unfavorable decision to Plaintiff on May 24, 2011. The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Thereafter, Plaintiff timely filed this action for a right to review of the Commissioner's final decision under 42 U.S.C. § 405(g).

## II.    Standard of Review

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990). The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner—so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir.1990); see also, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.1986); *Hancock v. Astrue*, 657 F.3d 470, 472 (4th Cir.2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir.1986) (quoting *Perales*, 402 U.S. at 401). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir.1976) ("We note that it is the

responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir.1982).

## III.  The ALJ Decision

In obtaining disability benefits, the word "disability" is defined by Social Security Administration regulations as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). To be "disabled", Plaintiff must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); *See also* 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

### A.  Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant age eighteen or older is disabled. 20 C.F.R. § 416.920(a). The Commissioner evaluates a disability claim by using the following five-step analysis:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2.  An individual who does not have a "severe impairment" will not be found to be disabled;

3.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in

3

Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). In this case, the Commissioner determined Plaintiff's claim failed at the fifth step of the sequential evaluation process. (Tr. 21-22).

**B.      The ALJ's Findings of Fact and Conclusions of Law**

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since Plaintiff did not work after the alleged onset date of November 5, 2009. (Tr. 15, Finding 2). The ALJ found that Plaintiff had the severe impairments of obesity, degenerative disc disease, and degenerative joint disease at step two of the sequential review. (Tr. 15, Finding 3). The ALJ found, at step three, that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the listings. (Tr. 17, Finding 4). The ALJ assigned Plaintiff the residual functional capacity ("RFC") to perform sedentary work. (Tr. 18, Finding 5). The ALJ found that Plaintiff could not perform past relevant work at step four; however, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant could perform. (Tr. 21, Finding 10).

**IV.    Discussion**

Plaintiff raises three issues for review. First, Plaintiff argues that the ALJ's finding of Plaintiff's mental impairments being not severe is erroneous because the ALJ adopted the opinion of a doctor that found Plaintiff's ability to tolerate stress was mildly to moderately

impaired.  Second, Plaintiff argues that the ALJ improperly disregarded the opinion of Plaintiff's treating physician.  And third, Plaintiff contends that the ALJ's Residual Functioning Capacity ("RFC") is not supported by substantial evidence.  The issues will be discussed in that order.

A.    **The ALJ did not err at step two with the determination that Plaintiff's mental impairment of major depressive disorder was not severe.**

Step two of the sequential evaluation involves the ALJ considering whether Plaintiff's impairments are severe.  20 C.F.R. §§ 404.1520, 416.920.  The ALJ did not find Plaintiff's mental impairment of major depressive disorder severe at step two.  (Tr. 16-17, Finding 3). Plaintiff claims that the ALJ improperly found McClure's mental impairments as not severe and that justifies a remand.[1]  (Doc. 12, at 15).

The severity evaluation is a "threshold screening standard to eliminate frivolous claims at an early stage in the process."  *Bowen v. Yuckert*, 482 U.S. 137, 180 (1987).  A "severe impairment" is an impairment or a combination of impairments that significantly limit an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Social Security Ruling[2] ("SSR")  96-3p states that:

> [A]n impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities."

---

1 Part 1.3 of Plaintiff's argument relates solely to the RFC analysis and will not be addressed because of the remand.  Portions of Part 1.2 also addresses the RFC analysis and will not be addressed for the same reaon.

2 "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

*See also* SSR 85-28. "Additionally, if an ailment is controlled by medication or treatment such that it does not cause work-related limitations, the ailment is not considered severe." *Clore v. Colvin*, 2:13-CV-23, 2014 WL 294640 at * 3 (W.D.N.C. Jan. 27, 2014) (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)).

In evaluating mental disorders, four broad functional areas are analyzed: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation.[3] 20 C.F.R. Pt. 404 Subpt. P, App. 1, 12.00(c)(1)-(4). The ALJ found that Plaintiff was mildly limited in the first three functional areas and noted that Plaintiff did not have an episode of decompensation. (Tr. 17).

### 1.    The ALJ's Decision

The ALJ cited the August 2006 psychological consultative examination by Dr. Hoogerman (Tr. 852-58), the November 2009 psychiatric consultative examination by Dr. Carraway (Tr. 1343-47), and the March 2010 Psychiatric Review Technique Assessment by state agency consultant Dr. John Parsley to find that Plaintiff had only a mild limitation in the three functional areas. (Tr. 17).

In the first functional area of daily living, the ALJ referenced Dr. Parsley's Psychiatric Review technique, Dr. Carraway's examination, and Dr. Hoogerman's psychological consultative examination. (Tr. 17) (comparing Tr. 1343-47 with Tr. 855). In Dr. Hoogerman's 2006 examination, the ALJ noted Plaintiff's allegation that her daughter had to help her with

_____

[3] Activities of daily living involve the ability to initiate and participate in activities such as cleaning, shopping, caring for grooming and hygiene, among other things, without the supervision or direction of others; social functioning is the ability to interact with other people on an independent, appropriate, and effective basis; concentration, persistence, or pace is the ability to "sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings"; episodes of decompensation are "exacerbations or temporary increases in symptoms or signs" joined with difficulty in performing activities of the three prior functional areas. 20 C.F.R. Pt. 404 Subpt. P, App. 1, 12.00(c)(1)-(4).

bathroom visits and putting on socks and shoes. However, in Dr. Carraway's November 2009 consultative examination Plaintiff did not repeat the same limitations. Dr. Parsley assigned Plaintiff a mild limitation and the ALJ agreed.

In the second functional area – social functioning – the ALJ assigned Plaintiff a mild limitation. (Tr. 17). Plaintiff reported to Carraway that she got along well with workplace colleagues and others. (Tr. 17). Dr. Parsley reviewed Plaintiff's file and found that Plaintiff had only a mild limitation in this functional area which is consistent with Dr. Carraway's findings. (Tr. 17; 1346).

The third functional area is concentration, persistence, or pace. Here, the ALJ found a mild limitation. The ALJ based his findings on Dr. Carraway's consultation where he attributed to her a mild impairment of short term and immediate memory, but otherwise intact attention and concentration. The ALJ noted that Dr. Carraway found that Plaintiff was minimally to mildly impaired on understanding, retaining, and performing instructions as well as performing routine tasks. (Tr. 17). The ALJ also noted that Dr. Parsley found a mild limitation is this functional area. (Tr. 17).

There were no experiences of decompensation. (Tr. 17).

The ALJ found a non-severe mental impairment because he found that there were no more than mild limitations in the first three functional areas and no episodes of decompensation. (Tr. 17).

2.      Plaintiff's Appeal

Plaintiff argues that the ALJ should have found that she had severe mental impairments. (Doc. 12, at 17). Plaintiff states that she "only argue[s] errors of law" but her argument appears

to be directed to the sufficiency of the evidence for the non-severe finding.  In fact, Plaintiff claims that all medical opinions in the record point to a finding of severe mental impairment. (Doc. 12, 15-17).  Accordingly, the Court will apply the substantial evidence standard.

The Court finds that substantial evidence supports the ALJ's decision finding Plaintiff's mental impairments to be non-severe.  The ALJ went through the four step process appropriately and cited to medical opinions.[4]   A reasonable mind would accept the ALJ's finding.  Moreover, the crux of Plaintiff's appeal appears to relate to how the residual functional capacity (RFC) assessment was performed, which the Court will address further below.

As a further ground for not granting remand on this basis, the Plaintiff has failed to provide the Court with any authority or rationale for remanding for failing to characterize the alleged mental impairments as severe.  As noted above, the severity analysis is a threshold issue. Plaintiff crossed the threshold when the ALJ found a severe combination of impairments of obesity, degenerative disc disease, and degenerative joint disease.  (Tr. 16).  It is undisputed that the ALJ recognized and addressed the alleged mental impairments in the RFC analysis. (Tr. 20-21).  Therefore, failure to characterize the mental impairments as severe is at best harmless. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the burden of demonstrating that an error is harmful normally falls on the party challenging the agency's decision.).

      **B.**      **The ALJ failed to properly weigh the opinion of Plaintiff's treating physician.**

            1.      Standards for Weighing A Treating Physician's Opinion

An ALJ must give controlling weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an impairment, is well supported by

---

[4] The ALJ's finding is buttressed by other evidence in the record as well.  (*See* Hammonds Psychiatric Review Technique dated 11/20/2009, Tr. 1354).

medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Therefore, a treating physician's opinion will not be entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record.[5] An ALJ must always give "good reasons" for the weight given or not given to a treating physician's opinions. § 404.1527(c)(2).

If a treating physician's opinion is not conclusive, the opinion must be evaluated and weighed considering (1) whether the physician has examined the claimant; (2) the length of the treatment relationship and frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(c).

2.      Dr. Davis's Opinion

On January 6, 2011 Davis issued his opinion that Plaintiff could stand/walk less than two hours and sit for about two hours total in a eight hour work day. (Tr. 1585). He also opined that Plaintiff could not walk a city block without rest. (Tr. 1583). He also did not expect Plaintiff to be able to continuously stand or sit for a period of fifteen minutes. (*Id.*). He also opined that Plaintiff would be severely limited in dealing with work stress. (Tr. 1584).

He diagnosed Plaintiff as having degenerative disc issues, osteoarthritis of the knees and back, fibromyalgia and depression. (Tr. 1583). His clinical findings and objective signs were

---

[5] If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996); *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992) (holding that a treating physician's opinion need not be afforded controlling weight).

listed as "tender points throughout." (*Id.*). He stated Plaintiffs symptoms were pain, fatigue, and swelling of joints. (*Id.*) He stated that Plaintiff had a poor response to medication. (*Id.*).

### 3. The ALJ's Treatment of Dr. Davis's Opinion

The ALJ gave Dr. Davis's opinion "little weight." (Tr. 20). This was because "Dr. Davis . . . had only a brief treatment relationship with the claimant when he completed his medical source statement." Further, the ALJ found that Dr. Davis's opinion was "not consistent with the record as a whole or his own treatment records." (*Id.*). Further, his treatment notes indicated that he helped her fill out her disability forms based largely on her subjective complaints. (*Id.*). Dr. Davis's opinion was also given little weight because it conflicted with his findings in December 2010 that the claimant was feeling good. (*Id.*).

### 4. Plaintiff's Appeal

Plaintiff argues that the ALJ improperly gave less weight to Dr. Davis's opinion in favor of Dr. Caviness. (Doc. 12, at 22). Further, Plaintiff states that the ALJ's general finding of inconsistency with the record is contrary to SSR 96-2. (Doc. 12, at 22-23). Plaintiff also disputes the reasoning behind the ALJ's finding that Dr. Davis's opinion was inconsistent with his own treatment notes. (Doc. 12, at 24).

Dr. Davis began treating Plaintiff on September 15, 2010. (Tr. 1579). He filled out her Physical Residual Functional Capacity Questionnaire on January 6, 2011 (Tr. 1587) (signature date) or December 10, 2010 (Tr. 1615) (Dr. Davis stating "[w]e have filled out her disability forms). Dr. Davis examined Plaintiff seven times before signing the Residual Functional Capacity Questionnaire. (Tr. 1572-87; 1600-1618).

The ALJ discredited the testimony in part because of the brief nature of the treatment relationship, which is a factor the regulations explicitly require him to consider. On the other hand, the ALJ gave great weight to the opinion of Dr. Caviness, who is a state agency consultant who did not examine the Plaintiff and did not have any of Dr. Davis's records.

Part of the ALJ's rationale for giving little weight to Dr. Davis's opinion was due to the fact that he was helping her fill out the form which was "based largely on her subjective complaints." The Court notes that the Dr. Davis's opinion is in accordance with the opinions rendered in the case of *Taylor v. Colvin*, No. 7:13CV536, 2014 WL 4385796 (W.D. Va. Sept. 4, 2014) (clinical findings including multiple trigger points, obesity, anxiety, insomnia, and depression).[6] In fact, the *Taylor* case is analogous in another way. In *Taylor*, the ALJ discredited the opinions of treating physicians who opined that the claimant had fibromyalgia along with degenerative joint disease and obesity because the reports "were not supported by appropriate clinical notations." 2014 WL 4385796 at *2. The doctors made the clinical finding, as Dr. Davis did, that tender points were consistent with fibromyalgia. *Id.* at *3.[7] The crux of the problem in the *Taylor* decision was that the ALJ rejected these reports in favor of a non-examining state agency report where the doctor did not have the benefit of the records of the treating physicians. This is exactly what occurred in the case of Plaintiff.

The Court recognizes that "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical

---

[6] The Court is not implying what weight, if any, should be given to Dr. Davis's opinion. However, his opinion, while not as voluminous or well supported as those issued by the doctors in *Taylor*, is at least consistent with their findings.

[7] Of course, this is inconsistent with the ALJ's finding that the Plaintiff presented "no objective support for her allegations regarding her fibromyalgia." (Tr. 20). The fact that Dr. Davis stated she did not have a history of fibromyalgia in October 2010 does not necessarily conflict with his opinion that she had it when he issued his opinion in January 2011. (Tr. 20).

issues in disability claims under the Act." SSR 96-6p. In fact, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.* SSR 96-6p provides that it would be appropriate to give greater weight to a non-treating opinion when it is based on a "review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* However, the inverse occurred here. Therefore, the Court holds that there was not substantial evidence to support the treatment of the medical record. Therefore, the Commissioner is directed to submit the opinions from treating and examining sources to the non-examining source for further consideration. The Court recognizes that this may or may not alter Dr. Caviness's opinion.

Plaintiff also argues that the ALJ's erred in the decision to give less weight to Dr. Davis's opinion because of its inconsistency with the record and his own treatment notes. (Tr. 20). The ALJ's opinion discussing Dr. Davis does not give an example of inconsistency with the record; however, it does state that Plaintiff self-reported to the doctor that she was "actually feeling good" in December 2010. (Tr. 20).

The Court agrees with the Plaintiff in that a doctor's statement that the patient is "doing well" must be viewed in context of the illness[8]; however, this is not what the ALJ referenced. The ALJ referenced Plaintiff self-reporting to her doctor that she was "actually feeling good." (Tr. 1611). Of course, she also reported that she had "pain in her feet and legs with hand swelling and tingling bilaterally." (*Id.*). Viewing this in context, Dr. Davis's finding that

---

[8] *See e.g.*, *Beck v. Astrue*, No. 10-CV-362, 2011 WL 4455861 (D.N.H. Sept. 23, 2011).

Plaintiff had fibromyalgia may be seen to conflict with a finding that she was feeling good. Therefore, the Court does find that the ALJ had substantial evidence to find such an inconsistency; however not so much as to discredit the opinion entirely.

Plaintiff also asserts that the ALJ did not list specifically what parts of the record were inconsistent with Dr. Davis's opinion and that alone justifies a remand. (Doc. 12, at 22-23). As the Court will remand for further proceedings, the Court need not decide whether lack of explanation in this matter would warrant remand. However, the Plaintiff is correct that the ALJ was conclusory in stating that Dr. Davis's opinion was inconsistent with the record as a whole. As noted above, the ALJ must provide good reasons for rejecting a treating physician's opinion. The reasons need to be "sufficiently specific" to make review meaningful. SSR 96-2. While the Court need not decide whether the lack of specificity alone would warrant a remand, it does **ORDER** the ALJ to point to the evidence in the record that is inconsistent with Dr. Davis's opinion should the ALJ not assign it weight.

Plaintiff further argues that the ALJ failed to weigh appropriately Dr. Burgess's consultative examination, which Plaintiff asserts is consistent with Dr. Davis's opinions. (Doc. 12, at 25). Plaintiff also argues that the ALJ performed an incorrect RFC analysis. (Doc. 12, at 26-27). However, in light of the Court's order that this matter be remanded, Plaintiff's remaining issues will not be addressed because they may be rendered moot on remand. *Rogers v. Colvin*, No. 0:12-2210, 2014 1330088 at *4 (D.S.C. Mar. 31, 2014) (citing *Boone v. Barnhart*, 353 F.3d 203, 211 n. 19 (3d Cir. 2003)).

## V.       Decretal

**IT IS, THEREFORE, ORDERED THAT**

**(1)** the final decision of the Commissioner denying Plaintiff's Disability Insurance Benefits and Supplemental Security Income benefits is reversed and remanded pursuant to sentence four of § 405(g) for further proceedings consistent with this order;

**(2)** Plaintiff's Motion for Summary Judgment (Doc. 11) seeking remand is **GRANTED**; however, inasmuch as Plaintiff's Motion for Summary Judgment seeks this Court to direct the Commissioner to award benefits it is **DENIED**; and

**(3)** Defendant's Motion for Summary Judgment (Doc. 13) is **DENIED**.

Signed: October 22, 2014

Richard L. Voorhees
United States District Judge